**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; CALIFORNIA CHAMBER OF COMMERCE; NATIONAL RETAIL FEDERATION; CALIFORNIA RETAILERS ASSOCIATION; NATIONAL ASSOCIATION OF SECURITY COMPANIES; HOME CARE ASSOCIATION OF AMERICA; CALIFORNIA ASSOCIATION FOR HEALTH SERVICES AT HOME, | No. 20-15291<br><br>D.C. No.<br>2:19-cv-02456-KJM-DB<br><br><br>OPINION |

     *Plaintiffs-Appellees,*

v.

ROB BONTA, in his official capacity as the Attorney General of the State of California; LILIA GARCIA-BROWER, in her official capacity as the Labor Commissioner of the State of California; JULIE A. SU, in her official capacity as the Secretary of the California Labor and Workforce Development Agency; KEVIN RICHARD KISH, in his official

2          CHAMBER OF COMMERCE V. BONTA

capacity as Director of the California
Department of Fair Employment and
Housing of the State of California,

          *Defendants-Appellants.*


Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted December 7, 2020
Submission Withdrawn August 22, 2022
Resubmitted August 22, 2022
San Francisco, California

Filed February 15, 2023

Before: Carlos F. Lucero,[*] William A. Fletcher, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Dissent by Judge Lucero

---

[*] The Honorable Carlos F. Lucero, United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Civil Rights

Affirming the district court's grant of a preliminary injunction in favor of plaintiffs, a collection of trade association and business groups (collectively, the Chamber of Commerce), the panel held that the Federal Arbitration Act (FAA) preempted California's Assembly Bill 51 (AB 51), which was enacted to protect employees from "forced arbitration" by making it a criminal offense for an employer to require an existing employee or an applicant for employment to consent to arbitrate specified claims as a condition of employment.

The panel explained that Assembly Bill 51 criminalizes only contract formation; an arbitration agreement executed in violation of this law is enforceable. California took this approach to avoid conflict with Supreme Court precedent, which holds that a state rule that discriminates against arbitration is preempted by the Federal Arbitration Act. Under Section 433 of the California Labor Code, an employer who violates AB 51 has committed a misdemeanor. *See* CAL. LAB. CODE § 433. But to avoid preemption by the FAA, the California legislature included a provision ensuring that if the parties did enter into an arbitration agreement, it would be enforceable. *See* Cal. Lab. Code § 432.6(f). This resulted in the oddity that an employer subject to criminal prosecution for requiring an

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

employee to enter into an arbitration agreement could nevertheless enforce that agreement once it was executed.

The panel stated that *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 683 (1996), and *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017), make it clear that state rules that burden the formation of arbitration agreements stand as an obstacle to the FAA. Although the plaintiffs in *Casarotto* and *Kindred Nursing* were attempting to enforce an executed arbitration agreement, the Court's rationale for invalidating state rules burdening the formation of arbitration agreements was equally applicable to a state rule like AB 51, which discriminates against the formation of an arbitration agreement but does not make an improperly formed arbitration agreement unenforceable. The panel concluded that the approach adopted by the Supreme Court in *Casarotto* and *Kindred Nursing* for determining whether the FAA preempts a state rule limiting the ability of parties to form arbitration agreements applies to state rules that prevent parties from entering into arbitration agreements in the first place. The panel further agreed with two sister circuits that the FAA preempts a state rule that discriminates against arbitration by discouraging or prohibiting the formation of an arbitration agreement. *See Saturn Distrib. Corp. v. Williams,* 905 F.2d 719, 723 (4th Cir. 1990); *Sec. Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1123–24 (1st Cir. 1989).

Applying these principles to determine whether AB 51 was preempted by the FAA, the panel held that AB 51's penalty-based scheme to inhibit arbitration agreements before they are formed violates the "equal-treatment principle" inherent in the FAA and is the type of device or formula evincing hostility towards arbitration that the FAA was enacted to overcome. Because the FAA's purpose is to

further Congress's policy of encouraging arbitration, and AB 51 stands as an obstacle to that purpose, AB 51 was therefore preempted.

Because all provisions of AB 51 work together to burden the formation of arbitration agreements, the panel rejected California's argument that the court could sever Section 433 of the California Labor Code under the severability clause in Section 432.6(i), and then uphold the balance of AB 51. AB 51 provides no authority to delete Section 433, because the severability clause in Section 432.6(i) applies only to Section 432.6. In any event, the panel could not presume that the California legislature would want to invalidate a generally applicable provision such as Section 433.

Because AB 51 was preempted by the FAA, the district court correctly held that the Chamber of Commerce was likely to succeed on the merits of its claim for declaratory and injunctive relief. And because California did not challenge the district court's holding that the remaining factors also weighed in favor of the Chamber of Commerce, the panel held that the district court did not abuse its discretion when it granted the Chamber of Commerce's motion for a preliminary injunction.

Dissenting, Judge Lucero stated that the majority nullified a California law codifying what the enactors of the FAA and the Supreme Court took as a given: arbitration is a matter of contract and agreements to arbitrate must be voluntary and consensual. Judge Lucero stated that AB 51 operates in a substantively different manner than state rules previously struck down as preempted by the FAA. Unlike the state statutes in *Kindred Nursing* and *Casarotto*, which directly invalidated arbitration agreements, AB 51 regulates conduct preceding arbitration agreements. AB 51 ensures

that arbitration agreements are entered on fair terms yet does not go so far as to invalidate arbitration agreements that are not. The majority's application of *Kindred Nursing* and *Casarotto* to AB 51 improperly expanded prior jurisprudence.

---

### COUNSEL

Chad A. Stegeman (argued) and Kristin A. Liska, Deputy Attorneys General; Michelle M. Mitchell, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Xavier Becerra; Attorney General of California; Office of the California Attorney General, San Francisco, California; Joshua A. Klein, Deputy Solicitor General, Office of the Attorney General, Oakland, California; for Defendants-Appellants.

Andrew J. Pincus (argued), Archis A. Parasharami, and Daniel E. Jones, Mayer Brown LLP, Washington, D.C.; Donald Falk, Schaerr Jaffe LLP, San Francisco, California; Maurice Baskin, Littler Mendelson PC, Washington, D.C.; Bruce J. Sarchet, Littler Mendelson, Sacramento, California; for Plaintiffs-Appellees.

Cliff M. Palefsky, Keith Ehrman, and Matt Koski, McGuinn Hillsman & Palefsky, San Francisco, California, for Amicus Curiae California Employment Lawyers Association.

George W. Abele and Deisy Castro, Paul Hastings LLP, Los Angeles, California, for Amicus Curiae California Employment Law Council.

Dylan B. Carp and Scott P. Jang, Jackson Lewis PC, San Francisco, California; Angelo I. Amador, Restaurant Law

Center, Washington, D.C.; for Amici Curiae Restaurant Law Center and California Restaurant Association.

Barbara J. Miller and Kevin J. Bohm, Morgan, Lewis & Bockius LLP, Costa Mesa, California; Thomas M. Peterson, Morgan, Lewis & Bockius LLP, San Francisco, California; for Amicus Curiae Employers Group.

Fred Hiestand, Fred J. Hiestand APC, Sacramento, California, for Amicus Curiae Civil Justice Association of California.

## OPINION

IKUTA, Circuit Judge:

California enacted Assembly Bill 51 (AB 51) to protect employees from what it called "forced arbitration" by making it a criminal offense for an employer to require an existing employee or an applicant for employment to consent to arbitrate specified claims as a condition of employment. But AB 51 criminalizes only contract formation; an arbitration agreement executed in violation of this law is enforceable. California took this approach to avoid conflict with Supreme Court precedent, which holds that a state rule that discriminates against arbitration is preempted by the Federal Arbitration Act (FAA). This appeal raises the question whether the FAA preempts a state rule that discriminates against the formation of an arbitration agreement, even if that agreement is ultimately enforceable. We hold that such a rule is preempted by the FAA.

I

The history and purpose of AB 51 must be understood in the context of California's legislative efforts to impose limits on parties' agreements to arbitrate certain disputes. The FAA embodies a "national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and the Supreme Court has interpreted its scope broadly, *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995). Over the years, the Supreme Court has struck down a number of California laws or judge-made rules relating to arbitration as preempted by the FAA.[1]

Mindful of this history, the California legislature engaged in a prolonged effort to craft legislation that would prevent employers from requiring employees to enter into arbitration agreements as a condition of employment, while avoiding conflict with the FAA. In 2015, the California legislature passed Assembly Bill 465, which banned employers from requiring arbitration agreements as a condition of employment and rendered unenforceable any contract including such a requirement. A.B. 465, 2015 Leg.

---

[1] *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding that the FAA preempted a California rule that contract provisions disallowing classwide arbitration are unconscionable); *Preston v. Ferrer*, 552 U.S. 346, 349–50 (2008) (holding that the FAA preempted a California law giving a state agency primary jurisdiction over a dispute involving the California Talent Agency Act despite the parties' agreement to arbitrate such disputes); *Perry v. Thomas*, 482 U.S. 483, 484, 491 (1987) (holding that the FAA preempted a state statute permitting litigation of wage collection actions despite the existence of a private agreement to arbitrate).

(Cal. 2015).[2]  The bill was vetoed by Governor Jerry Brown on the ground that such a "blanket ban" had been "consistently struck down in other states as violating the Federal Arbitration Act" and noted that the California Supreme Court and United States Supreme Court had invalidated similar legislation.  Governor's Veto Message for A.B. 465, 2015–16 Cal. Leg., Reg. Sess. (2015).

Three years later, the state legislature passed AB 3080, which prohibited an employer from requiring an employee to waive a judicial forum as a condition of employment. A.B. 3080, 2018 Leg. (Cal. 2018).  Governor Brown exercised his veto power again, explaining that AB 3080 "plainly violates federal law."  Governor's Veto Message for A.B. 3080, 2017–18 Cal. Leg., Reg. Sess. (2018).  Governor Brown cited the "clear" direction from the United States Supreme Court in *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58–59 (2015) and *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017).

After Governor Brown left office, the California Assembly tried again, introducing AB 51 in December 2018, which added a number of interlocking provisions to the California Labor Code.

First, AB 51 added Section 432.6 to Article 3 of the California Labor Code.  Section 432.6(a) prohibits employers from requiring employees to waive, as a condition of employment, the right to litigate certain claims. It states:

---

[2] The relevant legislative history referenced here is publicly available on the California Legislative Information website: https://leginfo.legisl ature.ca.gov.

> A person shall not, as a condition of
> employment, continued employment, or the
> receipt of any employment-related benefit,
> require any applicant for employment or any
> employee to waive any right, forum, or
> procedure for a violation of any provision of
> the California Fair Employment and Housing
> Act [FEHA] (Part 2.8 (commencing with
> Section 12900) of Division 3 of Title 2 of the
> Government Code) or this code, including the
> right to file and pursue a civil action or a
> complaint with, or otherwise notify, any state
> agency, other public prosecutor, law
> enforcement agency, or any court or other
> governmental entity of any alleged violation.

CAL. LAB. CODE § 432.6(a) (West 2020). Under Section
432.6(c), the phrase "a condition of employment" includes
"an agreement that requires an employee to opt out of a
waiver or take any affirmative action in order to preserve
their rights." *Id.* § 432.6(c).

Section 432.6(b) prohibits employers from retaliating
against applicants for employment or employees based on
their refusal to waive such rights. *Id.* § 432.6(b). It states:

> An employer shall not threaten, retaliate or
> discriminate against, or terminate any
> applicant for employment or any employee
> because of the refusal to consent to the waiver
> of any right, forum, or procedure for a
> violation of the California Fair Employment
> and Housing Act or this code, including the
> right to file and pursue a civil action or a

> complaint with, or otherwise notify, any state
> agency, other public prosecutor, law
> enforcement agency, or any court or other
> governmental entity of any alleged violation.

*Id*. Section 432.6(f) addresses FAA preemption, stating:
"Nothing in this section is intended to invalidate a written
arbitration agreement that is otherwise enforceable under the
Federal Arbitration Act (9 U.S.C. Sec. 1 et seq.)." *Id.*
§ 432.6(f). There is also a severability clause: "The
provisions of this section are severable. If any provision of
this section or its application is held invalid, that invalidity
shall not affect other provisions or applications that can be
given effect without the invalid provision or application."
*Id.* § 432.6(i).

There are two methods for enforcing AB 51. The act
added Section 12953 to the California Government Code,
which states: "It is an unlawful employment practice for an
employer to violate Section 432.6 of the Labor Code." CAL.
GOV'T CODE § 12953 (West 2020). Further, because Section
432.6 is contained in Article 3 of the California Labor Code,
Section 433 of the California Labor Code applies. It states:
"Any person violating this article [Article 3] is guilty of a
misdemeanor." CAL. LAB. CODE § 433.

Because the parties to an arbitration agreement must
waive the right to litigate in a judicial forum, *see* CAL. LAB.
CODE § 432.6(a), AB 51 effectively bars an employer from
requiring an employee or applicant for employment to enter
into an agreement to arbitrate certain claims as a condition
for being hired or for keeping a job, or from retaliating
against an employee or applicant who refuses to do so, *see
id*. § 432.6(a)–(b). AB 51 also bars employers from using
an employment contract that requires the employee to take

an affirmative step in order to opt out of an arbitration agreement. *See id.* § 432.6(c). Under Section 433 of the California Labor Code, an employer who violates AB 51 has committed a misdemeanor. *See id*. § 433. But to avoid preemption by the FAA, the California legislature included a provision ensuring that if the parties did enter into an arbitration agreement, it would be enforceable. *See id*. § 432.6(f). This resulted in the oddity that an employer subject to criminal prosecution for requiring an employee to enter into an arbitration agreement could nevertheless enforce that agreement once it was executed.

Legislative reports made clear why AB 51 provided that criminal conduct—entering into an arbitration agreement with an employee—does not affect the enforceability of the resultant agreement to arbitrate. The California Senate Judiciary Committee report on AB 51 asserted that AB 51 "successfully navigates around" Supreme Court precedent and avoids preemption by applying only to the condition in which an arbitration agreement is made, as opposed to banning arbitration itself. S. JUDICIARY COMM. REPORT, Reg. Sess., at 8 (Cal. 2019); *see also* ASSEMBLY COMM. ON LAB. & EMP. REPORT, Reg. Sess., at 3 (Cal. 2019) (same). According to these reports, AB 51 was designed to give the legislature "a reasoned case" that the bill would not be preempted, S. JUDICIARY COMM. REPORT, at 7, given that "[t]here has not been a preemption case in the absence of an arbitration agreement," ASSEMBLY COMM. ON LAB. & EMP. REPORT, at 3. In short, "AB 51 seeks to sidestep the preemption issue" relating to arbitration agreements. S. COMM. ON LAB., PUB. EMP., & RET. REPORT, Reg. Sess., at 4 (Cal. 2019). In other words, the legislature was persuaded by the legal theory that the FAA did not preempt a state rule that inhibits the formation of an arbitration agreement, but

CHAMBER OF COMMERCE V. BONTA        13

does not render such an agreement unenforceable once executed.

California's new governor, Gavin Newsom, signed the bill into law, even though AB 51 was identical in many respects to the vetoed AB 3080. *See* S. JUDICIARY COMM. REPORT, at 9. AB 51 was enacted with an effective date of January 1, 2020. CAL. LAB. CODE § 432.6(h).

On December 9, 2019, a collection of trade associations and business groups (collectively, the Chamber of Commerce)**[3]** filed a complaint for declaratory and injunctive relief against various California officials (collectively, "California"). The Chamber of Commerce sought a declaration that AB 51 was preempted by the FAA, a permanent injunction prohibiting California officials from enforcing AB 51, and a temporary restraining order. The district court granted the motion for a temporary restraining order, and after a hearing, issued a minute order granting the motion for a preliminary injunction. The district court ruled that the Chamber of Commerce was likely to succeed on the merits of its preemption claim because AB 51 "treats arbitration agreements differently from other contracts" and "conflicts with the purposes and objectives of the FAA." California filed a timely interlocutory appeal. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and now affirm.

---

[3] The appellees are the Chamber of Commerce of the United States of America, the California Chamber of Commerce, the National Retail Federation, the California Retailers Association, the National Association of Security Companies, the Home Care Association of America, and the California Association for Health Services at Home.

II

"We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "The legal issues underlying" the district court's decision "are reviewed de novo," and "the district court's factual findings are reviewed for clear error." *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018) (citations omitted). "A district court abuses its discretion in issuing a preliminary injunction if its decision is based on either an erroneous legal standard or clearly erroneous factual findings." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008) (citation omitted).

A party moving for preliminary injunctive relief must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of harm tips in the movant's favor, and (4) that the injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "The first factor—likelihood of success on the merits—is the most important factor." *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) (citation and quotation marks omitted). Additionally, when a party seeks a preliminary injunction against the government, as is the case here, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

California does not challenge the district court's holding that the balance of equities and the public interest weigh in favor of the Chamber of Commerce. Instead, California challenges only the district court's holding that AB 51 is

preempted by the FAA, and that the Chamber of Commerce is therefore likely to succeed on the merits of their claim for declaratory and injunctive relief.

### III

### A

We begin by spelling out the applicable principles of preemption. The Supremacy Clause provides that the Constitution and laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. The Supremacy Clause "provides 'a rule of decision' for determining whether federal or state law applies in a particular situation." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015)).

A federal statute may expressly preempt state law by enacting a clear statement to that effect. *Id.* In the absence of an express provision for preemption, the Supreme Court has "found that state law must yield to a congressional Act in at least two circumstances." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "[W]hen the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively," state law is preempted. *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (second alteration in original)). "And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby*, 530 U.S. at 372. Conflict preemption may occur either where it is "impossible for a private party to comply with both state and federal

requirements," *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672 (2019), or where, under the circumstances of a particular case, the challenged state law "creates an unacceptable 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Wyeth v. Levine*, 555 U.S. 555, 563–64 (2009) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

A state law may pose an obstacle to a federal statute in various ways. There is no "rigid formula or rule" for determining when an act of Congress preempts a state law. *Hines*, 312 U.S. at 67. Rather, what constitutes "a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373. If the purpose and intended effects of the federal statute are blocked by the state law, then "the state law must yield to the regulation of Congress within the sphere of its delegated power." *Id.* (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)).

B

"The FAA . . . does [not] reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). But "even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby*, 530 U.S. at 372 (citations omitted).

Applying the principles of obstacle preemption to determine the FAA's preemptive scope, we begin with the FAA's "purpose and intended effects," *id.* at 373, because "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case," *Medtronic, Inc. v. Lohr*, 518 U.S.

470, 485 (1996) (citations and quotation marks omitted). "[W]e do not write on a blank slate, for the Supreme Court has repeatedly identified the purposes" and objectives of the FAA. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 433 (9th Cir. 2015). The Supreme Court's cases "place it beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 563 U.S. at 345. The Court has "repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Id.* at 346 (citations omitted). In enacting the FAA, Congress intended to combat the longstanding "hostility towards arbitration" that "had manifested itself in a great variety of devices and formulas declaring arbitration against public policy." *Id*. at 342 (citation and quotation marks omitted). We have gone further, stating that "the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013).

In considering the preemptive scope of the FAA, the Supreme Court has focused on cases involving state laws or judge-made rules that single out executed arbitration agreements and prevent the enforcement of such agreements according to their terms. *See, e.g.*, *Imburgia*, 577 U.S. at 49; *Concepcion*, 563 U.S. at 344; *Allied-Bruce Terminix Cos., Inc.*, 513 U.S. at 272; *Perry*, 482 U.S. at 491; *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The Court has held that such state laws and rules are preempted by § 2 of the FAA, which provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract . . . . " 9 U.S.C. § 2. Based on the purpose of the FAA and the language of § 2, the Court has established an "equal-treatment principle," *Kindred Nursing*, 137 S. Ct. at 1426, which "requires courts to place arbitration agreements on equal footing with all other contracts," *id.* at 1424 (citation and quotation marks omitted). Under this principle, "[a] court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Id.* at 1426 (quoting *Concepcion*, 563 U.S. at 339). Even if a state law is purportedly "generally applicable," the FAA preempts the law if it "interferes with fundamental attributes of arbitration," *Concepcion*, 563 U.S. at 343–44, or has a "disproportionate impact on arbitration," *Mortensen*, 722 F.3d at 1159 (citation and quotation marks omitted).

A state rule interferes with arbitration if it discriminates against arbitration on its face or if it "covertly accomplishes the same objective by disfavoring contracts that have the defining features of arbitration agreements." *Kindred Nursing*, 137 S. Ct at 1423. Examples of state rules that disfavor the "defining features" of arbitration include a rule that prohibits an agreement that waives the right to a class action, or one that waives the right to a jury trial, or any other of the myriad "devices and formulas" used to declare arbitration against public policy. *See Concepcion*, 563 U.S. at 342.

The Court has made clear that the FAA's preemptive scope is not limited to state rules affecting the enforceability of arbitration agreements, but also extends to state rules that discriminate against the formation of arbitration agreements.

*See Kindred Nursing*, 137 S. Ct. at 1428–29; *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 683 (1996). In *Casarotto*, the Court held that the FAA preempted a Montana law making an arbitration agreement unenforceable unless the contract had the proper notice on the first page. 517 U.S. at 683. The Court held that "[t]he 'goals and policies' of the FAA . . . are antithetical to threshold limitations placed specifically and solely on arbitration provisions." *Id.* at 688 (citation omitted). In *Kindred Nursing*, the Court held that the FAA preempted the "Kentucky Supreme Court's clear-statement rule," which provided that a person holding a power of attorney for a family member could not enter into an arbitration agreement for that family member, unless the power of attorney gave the person express authority to do so. 137 S. Ct. at 1425–26. The Court reasoned that the Kentucky rule "specially impeded the ability of attorneys-in-fact to enter into arbitration agreements" and "thus flouted the FAA's command to place those agreements on an equal footing with all other contracts." *Id.* at 1429.

*Casarotto* and *Kindred Nursing* make it clear that state rules that burden the formation of arbitration agreements stand as an obstacle to the FAA. As *Kindred Nursing* explained, the "FAA cares not only about the 'enforce[ment]' of arbitration agreements, but also about their initial 'valid[ity]'—that is, about what it takes to enter into them." *Kindred Nursing*, 137 S. Ct. at 1428 (alterations in original). The Court has recognized that it would be "trivially easy for States to undermine the Act—indeed, to wholly defeat it"—by fashioning a rule that would make the formation of any arbitration agreement invalid. *Id.* "The FAA would then mean nothing at all—its provisions

rendered helpless to prevent even the most blatant discrimination against arbitration." *Id.* at 1428–29.

Although the plaintiffs in *Casarotto* and *Kindred Nursing* were attempting to enforce an executed arbitration agreement, the Court's rationale for invalidating state rules burdening the formation of arbitration agreements is equally applicable to a state rule like AB 51, which discriminates against the formation of an arbitration agreement but does not make an improperly formed arbitration agreement unenforceable. Given the evidence that AB 51's unusual structure (criminalizing the act of entering into an agreement, while allowing the parties to enforce it once executed) was for the purpose of "navigating around" Supreme Court precedent, it is hardly surprising that there is no Supreme Court precedent on point. Still, nothing in *Casarotto* or *Kindred Nursing* suggests that a state rule targeting only the formation of an arbitration agreement falls outside of the FAA's preemptive scope. As the Supreme Court has indicated, if a state could criminalize the conduct of entering into an arbitration agreement, it could entirely defeat the FAA's purpose. *Kindred Nursing*, 137 S. Ct. at 1428. Accordingly, "[t]o restrict the FAA to existing agreements would be to allow states to 'wholly eviscerate Congressional intent to place arbitration agreements upon the same footing as other contracts.'" *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 723 (4th Cir. 1990) (quoting *Southland Corp.*, 465 U.S. at 16–17 n.11). We therefore conclude that the approach adopted by the Supreme Court in *Casarotto* and *Kindred Nursing* for determining whether the FAA preempts a state rule limiting the ability of parties to form arbitration agreements applies to state rules that prevent parties from entering into arbitration agreements in the first place.

Our conclusion "falls well within the confines of (and goes no further than) present well-established law," *Kindred Nursing*, 137 S. Ct. at 1429, as indicated by two of our sister circuits, which have reached similar conclusions, *see Saturn*, 905 F.2d at 724; *Sec. Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1123–24 (1st Cir. 1989). In *Saturn*, the Fourth Circuit considered a Virginia law that prohibited automobile manufacturers and dealers from entering into an agreement that contained a non-negotiable arbitration provision. 905 F.2d at 724. The court rejected the state's argument that FAA preemption "does not extend to laws that prohibit or regulate the *formation* of arbitration agreements," because such a restriction would defeat Congress's equal treatment principle. *Id.* at 723 (emphasis in original). Therefore, the "FAA does not allow a state legislature to circumvent Congressional intent by enacting special rules to discourage or prohibit the formation of agreements to arbitrate." *Id.* According to the court, "common sense dictates" that a state court does not escape its obligation to enforce arbitration agreements to the same extent as other contracts merely "by banning the formation of arbitration agreements." *Id.* (citation omitted). Accordingly, "arbitration agreements may not be burdened with conditions on (their) formation and execution . . . which are not part of the generally applicable contract law." *Id.* at 723–24 (cleaned up).

Applying this principle to the state law at issue, the Fourth Circuit determined that "Virginia law generally permits contracting parties to make terms nonnegotiable, and singles out arbitration provisions as an exception to that rule." *Id.* at 724. It rejected the argument that the law was not discriminatory because the state statute "[did] not mention arbitration, and [could] appl[y] to any contractual provision that denies dealers access to the 'procedures,

forums or remedies' in Virginia," such as "forum-selection provisions." *Id.* at 724–25. As the court explained, "the mere fact that a statute or regulation does not expressly refer to arbitration is not determinative on the question of whether it impermissibly singles out arbitration provisions," *id.* at 725, because a state statute that does not refer to arbitration may be "preempted to the extent that it had the effect of prohibiting arbitration provisions," *id.* (*citing Southland Corp.*, 465 U.S. at 16–17 n.11).

Because the state statute was "clearly intended to avoid potentially adhesive arbitration contracts between automobile manufacturers and dealers," and the state had not "uniformly barred the formation of nonnegotiable contractual terms or declared all contracts of adhesion to be presumptively unenforceable," the Fourth Circuit concluded that the law treated arbitration agreements "more harshly than other contracts," and was thus preempted. *Id*. at 725–26.

The First Circuit reached a similar conclusion in *Connolly*. In that case, it held that the FAA preempted Massachusetts regulations that prohibited securities firms from requiring clients to agree to arbitration "as a nonnegotiable condition precedent to account relationships." 883 F.2d at 1117. The court rejected as "too clever by half" the state's argument that the regulations addressed the conduct of the broker-dealers, not the arbitration agreements. *Id.* at 1122. It reasoned that the regulations, by requiring "what is not generally required to enter contracts," *id.* at 1123, "inhibit a party's willingness to create an arbitration contract," *id.*, and as such stand as an obstacle to Congress's purpose in enacting the FAA because they conflict with the federal policy to favor arbitration agreements, *see id.* at 1124.

We agree with our sister circuits that the FAA preempts a state rule that discriminates against arbitration by discouraging or prohibiting the formation of an arbitration agreement. *See Saturn*, 905 F.2d at 723; *Connolly*, 883 F.2d at 1123–24. A law that "inhibit[s] a party's willingness to create an arbitration contract" stands as an obstacle to the purposes of the FAA. *Connolly*, 883 F.2d at 1123. Moreover, a state rule discriminates against arbitration even if it does not expressly refer to arbitration, but instead targets its defining characteristics. *See Saturn*, 905 F.2d at 725; *see also Connolly*, 883 F.2d at 1123. Because the FAA's purpose is to further Congress's policy of encouraging arbitration, a state law that also applies to other provisions (such as forum-selection clauses) unrelated to arbitration may be preempted if its focus is on arbitration. *See Concepcion*, 563 U.S. at 344; *see also Saturn*, 905 F.2d at 725.

C

We now apply the principles set forth above to determine whether AB 51 is preempted by the FAA. The central question is whether AB 51 stands as an "unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *Wyeth*, 555 U.S. at 563–64 (citation and quotations omitted).[4]

---

[4] Because of California's approach to drafting AB 51, § 2 does not directly apply to AB 51. Section 2 provides that an "agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. But AB 51 does not address the validity, revocability, or enforceability of an arbitration agreement. Instead, it provides that nothing in the act "is

We begin by asking whether AB 51 discriminates against arbitration agreements, either expressly or by disfavoring agreements that have the defining features of arbitration agreements.

AB 51 does not expressly bar arbitration agreements. There is no doubt, though, that AB 51 disfavors the formation of agreements that have the essential terms of an arbitration agreement. AB 51 prevents an employer from entering into a contract that includes non-negotiable terms requiring an employee to waive "any right, forum, or procedure for a violation of any provision of the [FEHA] or [the California Labor Code]," including "the right to file and pursue a civil action." A.B. 51, 2019 Leg. (Cal. 2019). Because a person who agrees to arbitrate disputes must necessarily waive the right to bring civil actions regarding those disputes in any other forum, AB 51 burdens the defining feature of arbitration agreements.

The burden imposed on the formation of arbitration agreements is severe. AB 51 deters an employer from including non-negotiable arbitration requirements in employment contracts by imposing civil and criminal sanctions on any employer who does so. *See* CAL. LAB. CODE § 433 (providing that any person violating Article 3, which includes § 432.6, is guilty of a misdemeanor); CAL. GOV'T CODE § 12953 ("It is an unlawful employment practice for an employer to violate Section 432.6 of the

---

intended to invalidate a written arbitration agreement that is otherwise enforceable" under the FAA. A.B. 51, 2019 Leg. (Cal. 2019). Therefore, we consider the more general principles of obstacle preemption, specifically whether AB 51 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *Hines*, 312 U.S. at 67.

Labor Code."). The threat of criminal and civil liabilities is intended to have a deterrent effect, Nan S. Ellis & Steven B. Dow, *Attaching Criminal Liability to Credit Rating Agencies: Use of the Corporate Ethos Theory of Criminal Liability*, 17 U. PA. J. BUS. L. 167, 173 (2014), and so it is clear that the penalties imposed by AB 51 inhibit an employer's willingness to create an arbitration contract with employees.[5]

Further, AB 51 "singles out arbitration provisions as an exception" to generally applicable law. *Saturn*, 905 F.2d at 724. California law generally allows an employer to enter into a contract with an employee that includes non-negotiable terms as a condition of employment, including requirements related to compensation, *see Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1331 (2006), and drug usage, *see Ross v. RagingWire Telecomms., Inc.*, 42 Cal. 4th 920, 924 (2008). But under AB 51, an employer cannot enter into a contract with non-negotiable terms essential to an arbitration agreement. It is irrelevant that the non-negotiable terms disapproved by AB 51 could also apply to other sorts of contractual provisions (such as forum-selection clauses) because "the Supreme Court has emphasized that the focus should be on whether the statute, either on its face or as

---

[5] California challenges the district court's factual finding that "AB 51 will likely have a deterrent effect on employers' use of arbitration agreements given the civil and criminal sanctions associated with violating the law." In making this finding, the district court relied on declarations from leaders of the various trade associations and business groups stating that members of their groups will have to change their contracting processes to avoid civil and criminal penalties. Given the substance of these declarations, and the common sense conclusion that criminal penalties will have a deterrent effect on behavior, the district court's finding was not clearly erroneous.

applied, imposes burdens on arbitration agreements that do not apply to contracts generally." *Id.* at 725; *see also Mortensen*, 722 F.3d at 1159.

AB 51's deterrence of an employer's willingness to enter into an arbitration agreement is antithetical to the FAA's "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1028 (9th Cir. 2013) (finding an Arizona immigration statute subject to obstacle preemption in part because it sought to punish conduct that Congress did not). Therefore, AB 51's penalty-based scheme to inhibit arbitration agreements before they are formed violates the "equal-treatment principle" inherent in the FAA, *Kindred Nursing*, 137 S. Ct. at 1426, and is the type of "device[]" or "formula[]" evincing "hostility towards arbitration" that the FAA was enacted to overcome, *Concepcion*, 563 U.S. at 342. Because the FAA's purpose is to further Congress's policy of encouraging arbitration, and AB 51 stands as an obstacle to that purpose, AB 51 is therefore preempted.

## D

We reject California's arguments to the contrary. First, California argues that because AB 51 regulates the conduct of employers before an arbitration agreement is formed, rather than affecting the validity or enforceability of the executed arbitration agreement itself, it does not conflict with the FAA. As we have explained, this argument fails. Rules that impede parties' ability to form arbitration agreements hinder the broad "national policy favoring arbitration," *Buckeye Check Cashing*, 546 U.S. at 443, just as much as those that undermine the enforceability of already-existing arbitration agreements.

California also claims that AB 51 does not pose an obstacle to the FAA because it is simply a prohibition against "forced arbitration." According to California, the legislature enacted AB 51 "to ensure a measure of equity in employee-employer relationships" by shielding employees from involuntary contracts forced upon them by employers. Absent such protection, California argues, employees could be forced to sign arbitration agreements that are illegal, or an employer could retaliate against even a long-term employee who refused to sign. California argues that precluding forced arbitration is consistent with Supreme Court precedent, such as *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 681 (2010), emphasizing that arbitration is a matter of consent. Similarly, the dissent asserts that AB 51 should not be preempted because "arbitration is a matter of contract and agreements to arbitrate must be voluntary and consensual," and the Supreme Court "has never held nor implied that employers may require arbitration as a condition of employment."

There is no merit to these arguments, which misunderstand basic principles of California contract law, Supreme Court caselaw regarding consent in arbitration cases, and AB 51 itself. Contrary to the arguments made by California and the dissent, a contract may be "consensual," as that term is used in contract law, even if one party accepts unfavorable terms due to some degree of unequal bargaining power.

It is a basic principle of contract law that a contract is not enforceable unless there is mutual, voluntary consent. *See, e.g.*, CAL. CIV. CODE §§ 1565, 1567; *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 789 (2019); *Morrill v. Nightingale*, 93 Cal. 452, 455 (1892). It has long been established that parties to a contract are generally deemed to

have consented to all the terms of a contract they sign, even if they have not read it. *See, e.g.*, *Marin Storage & Trucking Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001); *Greve v. Taft Realty Co.*, 101 Cal. App. 343, 351–52 (1929). This is true even if the contract at issue is an adhesion contract, defined by California courts as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961). Despite unequal bargaining power, "a contract of adhesion is fully enforceable according to its terms unless certain other factors are present," such as when a provision "does not fall within the reasonable expectations of the weaker or 'adhering' party" or when a provision "is unduly oppressive or unconscionable." *Graham v. Scissor-Tail, Inc*., 28 Cal. 3d 807, 819–20 (1981) (per curiam) (cleaned up). And although adhesion contracts do not fit the "classical model of 'free' contracting by parties of equal or near-equal bargaining strength," they are an "inevitable fact of life for all citizens." *Id.* at 817–818.

Of course, mandatory arbitration provisions in employment contracts of adhesion are not enforceable if the provisions are procedurally and substantively unconscionable, or otherwise unenforceable under generally applicable contract rules. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–26 (2019). Unequal bargaining power, "economic pressure," "sharp practices," and "surprise" can help establish procedural unconscionability. *Id.* at 126–29 (cleaned up). Moreover, if a party is forced to sign a contract by threats or physical coercion, for instance, the contract would lack mutual consent and be unenforceable "upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. AB 51 does nothing to change these basic principles. And contrary to California's arguments, a ruling that the FAA preempts AB 51 does not create a "new substantive right" for employers to mandate unconscionable or illegal arbitration requirements.

In short, under California law, an employee can "consent" to an employment contract by entering into it, even if the contract was a product of unequal bargaining power and even if it contains terms (such as an arbitration provision) that the employee dislikes, so long as the terms are not invalid due to unconscionability or other generally applicable contract principles.[6] Because the parties to a contract are deemed to consent to its terms, the "basic precept that arbitration 'is a matter of consent, not coercion,'" means only that courts must "ensure that 'private agreements to arbitrate are enforced according to their terms'" even in the face of state laws imposing different requirements on the contracting parties. *Stolt-Nielsen*, 559 U.S. at 681–82 (quoting *Volt*, 489 U.S. at 479).

If the parties agreed to resolve a matter by arbitration, "the FAA pre-empts state laws which 'require a judicial

---

[6] California argues that AB 51 merely prevents employers from imposing unconscionable and unenforceable terms of employment. But the FAA is already inapplicable to unconscionable agreements. *See Kindred Nursing*, 137 S. Ct. at 1426. Moreover, AB 51 is not as limited as California suggests: it does not refer to unconscionable arbitration provisions, but instead criminalizes the formation, or attempted formation, of any basic agreement to arbitrate claims. *See* CAL. LAB. CODE § 432.6(a). Thus, the argument that AB 51 regulates only "unconscionable" agreements is simply an argument that arbitration agreements are themselves unconscionable—an argument that reflects the "hostility to arbitration that led Congress to enact the FAA." *Kindred Nursing*, 137 S. Ct. at 1428 (internal quotation marks omitted).

forum for the resolution of [those] claims.'" *Volt*, 489 U.S. at 478 (quoting *Southland Corp.*, 465 U.S. at 10).

This principle applies equally to employment contracts and employment-related lawsuits. In upholding a contract provision requiring arbitration of Age Discrimination in Employment Act claims, the Supreme Court rejected the argument that the agreement was invalid due to the "unequal bargaining power between employers and employees." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32–33 (1991). The Court stated that "[m]ere inequality in bargaining power" is not a sufficient reason to refuse to enforce an arbitration agreement in the employment context, because "arbitration agreements are enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 33 (quoting 9 U.S.C. § 2).

Accordingly, there is no support for California's description of AB 51 as simply an assurance that employees will not be the victims of forced arbitration or be compelled to arbitrate claims against their wills. To the contrary, AB 51's interference with the ability of the parties to agree to arbitration stands as an obstacle to the "accomplishment and execution of the full purposes and objectives of Congress," and "thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344, 352 (quotation marks omitted).

Because all provisions of AB 51 work together to burden the formation of arbitration agreements, we conclude that the FAA preempts AB 51 as a whole to the extent it applies to arbitration agreements. We reject California's argument that we could sever Section 433 of the California Labor Code under the severability clause in Section 432.6(i), and then

uphold the balance of AB 51.**[7]** AB 51 provides no authority to delete Section 433, because the severability clause in Section 432.6(i) applies only to Section 432.6. Although, under California law, the presence of a severability clause "establishes a presumption" that "the invalid portions of a statute can be severed," *Cal. Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 270 (2011), Section 433 is not an invalid part of Section 432.6, and so this presumption does not apply. In any event, we may not presume that the California legislature would want to invalidate a generally applicable provision such as Section 433. *See id.* at 270–71.

The dissent's proposal to sever Section 12953 of the California Government Code, which imposes civil penalties for a violation of Section 432.6 of the California Labor Code, fails for the same reason. Because this section of the Government Code is not a part of Section 432.6 of the California Labor Code, the severability provision in Section 432.6(i) is inapplicable. Moreover, even if a court severed Section 12953 of the Government Code, a violation of AB 51 would still be subject to criminal penalties.**[8]** Thus,

---

[7] Section 433 of the California Labor Code states: "Any person violating this article [Article 3, Contracts and Applications for Employment] is guilty of a misdemeanor." CAL. LAB. CODE § 433.

Section 432.6(i) of the California Labor Code states: "The provisions of this section [Section 432.6] are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application." CAL. LAB. CODE § 432.6(i).

[8] Even if Section 433 of the California Labor Code (criminal penalties) and Section 12953 of the California Government Code (civil penalties) were both severable, we would disagree with the dissent's suggestion that the California legislature would have wanted a court to render AB 51 (Section 432.6) unenforceable by severing both provisions. *See Cal.*

regardless whether AB 51 includes a civil penalty, it "specially impede[s] the ability of [employers] to enter into arbitration agreements" and "flout[s] the FAA's command to place those agreements on an equal footing with all other contracts." *Kindred Nursing*, 137 S. Ct. at 1429.

IV

Because AB 51 is preempted by the FAA, the district court correctly held that the Chamber of Commerce is likely to succeed on the merits of its claim for declaratory and injunctive relief. And because California does not challenge the district court's holding that the remaining factors also weigh in favor of the Chamber of Commerce, we hold that the district court did not abuse its discretion when it granted the Chamber of Commerce's motion for a preliminary injunction.

**AFFIRMED.**

---

LUCERO, Circuit Judge, dissenting:

Since the 1990s, employers have increasingly utilized arbitration agreements to provide an alternative to court litigation. See Alexander J.S. Colvin, The Growing Use of Mandatory Arbitration, Econ. Pol'y Inst. (Apr. 6, 2018), https://files.epi.org/pdf/144131.pdf. In the first of the relevant Supreme Court cases, the Court considered whether the Federal Arbitration Act (FAA) preempted state law, and concluded that it did not. Volt Info. Scis., Inc. v. Bd. of Trs.

---

*Redevelopment Ass'n*, 53 Cal. 4th at 271. Indeed, California does not argue that Section 12953 should be severed.

of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).
Addressing consent to arbitrate, the Court stated:
"Arbitration under the [FAA] is a matter of consent, not
coercion . . . ." Id. In all the cases that have followed, the
Court has repeatedly emphasized that "the first principle that
underscores all of our arbitration decisions is that arbitration
is strictly a matter of consent." Lamps Plus, Inc. v. Varela,
139 S. Ct. 1407, 1415 (2019) (cleaned up); see also Oxford
Health Plans LLC v. Sutter, 569 U.S. 564, 574 (2013) (Alito,
J., concurring); Granite Rock Co. v. Int'l Bhd. of Teamsters,
561 U.S. 287, 299 (2010); Stolt-Nielsen S.A. v.
AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010).

The jurisprudence surrounding the FAA's preemptive
scope has grown on the precedential trellis of these basic
principles. Each time the Supreme Court has clarified the
preemptive scope of the FAA, it has done so by ruling on the
enforceability or validity of executed agreements to
arbitrate, explaining that the FAA does not preempt the
entire field of arbitration. Volt, 489 U.S. at 477. The Court
has never held nor implied that employers may require
arbitration as a condition of employment. Today my
respected colleagues in the majority directly depart from the
foregoing fundamental principles and nullify a California
law codifying what the enactors of the FAA and the Supreme
Court took as a given: arbitration is a matter of contract and
agreements to arbitrate must be voluntary and consensual.

California Assembly Bill 51 (AB 51), the California
statute at issue, operates in a substantively different manner
than state rules previously struck down as preempted by the
FAA. Unlike the state statutes in Kindred Nursing Centers
Ltd. P'ship v. Clark, 581 U.S. 246 (2017) and Doctor's
Assocs., Inc. v. Casarotto, 517 U.S. 681 (1996), which
directly invalidated arbitration agreements, AB 51 regulates

conduct <u>preceding</u> arbitration agreements. AB 51 ensures that arbitration agreements are entered on fair terms yet does not go so far as to invalidate arbitration agreements that are not. In enacting AB 51, California maintains respect for federal preemption over arbitration agreements while appropriately addressing state concerns with unfair employment negotiations. My colleagues' application of <u>Kindred Nursing</u> and <u>Casarotto</u> to AB 51 improperly expands prior jurisprudence. Thus, I must respectfully dissent.[1]

# I

Section 1 of AB 51 declares that "it is the policy of this state to ensure that all persons have the full benefit of the rights, forums, and procedures established in the California Fair Employment and Housing Act . . . and the Labor Code." 2019 Cal. Stats. Ch. 711 (AB 51). Pursuant to this policy,

---

[1] I agree with my colleagues that the imposition of civil and criminal sanctions for the act of executing an arbitration agreement directly conflicts with the FAA and such an imposition of sanctions is indeed preempted. I therefore concur with the majority as to the application of Labor Code § 433 and Government Code § 12953 to arbitration agreements covered by § 1 of the FAA.

However, I would find those sections severable from other provisions of AB 51. Under California law, "[t]he presence of [a severability] clause establishes a presumption in favor of severance," if the invalid portion is "grammatically, functionally, and volitionally separable." <u>Cal. Redev. Ass'n v. Matosantos</u>, 53 Cal. 4th 231, 270 (2011). AB 51 has a severability clause. Cal. Lab. Code § 432.6(i). AB 51's imposition of criminal sanctions is distinct from the other provisions because it was set aside in a separate section and operates in a different portion of California Code. Also, the legislature's clear intent was protection of consent to enter contracts, so it would have adopted the provision discussed here even if the sanctions were invalidated. Thus, I would find those sections severable.

AB 51 was enacted with the "purpose of . . . ensur[ing] that individuals are not retaliated against for refusing to consent to the waiver of those rights and procedures and to ensure that any contract relating to those rights and procedures be entered into as a matter of voluntary consent, not coercion." Id. Arbitration is not singled out by AB 51. Rather, it covers a range of waivers, including non-disparagement clauses and non-disclosure agreements. In short, AB 51 protects persons entering all employment contracts from coercion to waive their rights as employees.

## II

### A

As the majority indicates, only obstacle preemption is relevant to the present appeal. See Volt, 489 U.S. at 477. Under obstacle preemption, a state statute or rule is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)); see also Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 761 (9th Cir. 2015). State laws that merely overlap but do not obstruct federal statutes are not preempted. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig., 959 F.3d 1201, 1213 (9th Cir. 2020).

Broadly, "[t]he principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 344 (cleaned up). Rules that selectively interfere with the enforcement of arbitration agreements are therefore preempted by the FAA. A state rule may also stand as an obstacle to the FAA through "subtle methods" that "interfer[e] with fundamental attributes of arbitration." Lamps Plus, 139 S. Ct. at 1418

(quoting Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1622 (2018)).  Determination of whether a particular state statute constitutes an obstacle requires the court to "examin[e] the federal statute as a whole and identify[] its purpose and intended effects" and then compare it to the subject matter of the state statute.  Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000).

**B**

Review of the historical context of the FAA, its legislative history, and subsequent Supreme Court jurisprudence demonstrates that Congress was focused on the enforcement and validity of consensual written agreements to arbitrate and did not intend to preempt state laws requiring that agreements to arbitrate be voluntary. Congress passed the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20 (1985).  Decades prior to the FAA, "courts considered agreements to arbitrate unenforceable executory contracts" and breaching an agreement to arbitrate generally only "resulted in nominal legal damages."  Kristen M. Blankley, Impact Preemption:  A New Theory of Federal Arbitration Act Preemption, 67 Fla. L. Rev. 711, 719 (2015).  This refusal to enforce arbitration agreements stemmed from English common law doctrines, including "revocability," which allowed a party to withdraw their consent to arbitrate at any time prior to the arbitrator's ruling.  See David Horton, Federal Arbitration Act Preemption, Purposivism, and State Public Policy, 101 Geo. L.J. 1217, 1225 (2013).  In the years preceding the passage of the FAA, revocability and similar doctrines fell out of favor.  Id. at 1225-26; see also Meacham v. Jamestown, F. & C.R. Co., 211 N.Y. 346, 354 (1914) (Cardozo, J., concurring) ("It is true that some judges

have expressed the belief that parties ought to be free to contract about such matters as they please. In this state the law has long been settled to the contrary."). Congress thus passed the FAA in the context of increasing focus on parties' agreement and consent to arbitrate.

Securing the validity and enforceability of consensual arbitration agreements was precisely what Congress intended to achieve through the FAA. The House Report accompanying the FAA declared: "The purpose of this bill is to make valid and enforcible [sic] agreements for arbitration contained in contracts involving interstate commerce or within the jurisdiction [of] admiralty, or which may be the subject of litigation in the Federal courts." H.R. Rep. No. 68-96, at 1 (1924). The Senate Report agreed, describing the purpose of the statute as "[t]o make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." S. Rep. No. 68-536, at 1 (1924). The House Report makes explicit that the FAA was laser-focused on ensuring that people who agreed to arbitrate a dispute were held to their word:

> Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him.

H.R. Rep. No. 68-96, at 1.

In the almost-century since the FAA became law, the Supreme Court has expounded on the congressional purpose

animating its passage, explaining that it signified "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Court has reiterated this principle time and again over the years, and each time, without fail, it has noted that the FAA enshrined the enforceability and validity of consensual, written agreements to arbitrate disputes. See Epic Sys. Corp., 138 S. Ct. at 1621; Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013); Concepcion, 563 U.S. at 344; Volt, 489 U.S. at 478; Dean Witter Reynolds, 470 U.S. at 219. Thus, Congress' clear purpose was to ensure the validity and enforcement of consensual arbitration agreements according to their terms.

AB 51's purpose matches the FAA's purpose. The clear language of the FAA and those cases neither state nor imply that an employer may compel arbitration as a condition of employment, as the majority declares. Instead, the FAA's history, legislative purpose, and caselaw all demonstrate its intention to honor agreements freely agreed to according to the terms voluntarily submitted to by both parties. AB 51 advances that purpose. AB 51 ensures contracts are "entered into as a matter of voluntary consent, not coercion." 2019 Cal. Stats. Ch. 711. This does not form an obstacle to the FAA's purpose of ensuring consensual agreements are honored. I would find that AB 51 overlaps but does not obstruct the FAA and thus is not preempted.

## C

In determining otherwise, the majority relies largely on Kindred Nursing and Casarotto. These cases concerned preemption of state rules invalidating executed arbitration

agreements. The majority would apply the principles of those cases to AB 51, which addresses pre-agreement conduct and does not invalidate executed arbitration agreements. That reasoning would be persuasive if either (1) AB 51 regulated the enforcement or validity of executed arbitration agreements or (2) Kindred Nursing or Casarotto addressed regulation of pre-agreement conduct as preempted by the FAA. Yet neither condition is met.

AB 51 could not be more precise or explicit: "[n]othing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act." Cal. Lab. Code § 432.6(f). In this way, the California Act regulates the method of entering into the arbitration agreement. Its purpose is addressing the conduct that takes place prior to the existence of an agreement, as opposed to dealing with the enforcement of an arbitration clause in an agreement. In contrast, Kindred Nursing and Casarotto address state rules that render executed arbitration agreements themselves invalid or unenforceable. Neither address rules regulating pre-agreement behavior.

Kindred Nursing considers a clear statement rule announced by the Kentucky Supreme Court. 581 U.S. at 250. Before that court were two arbitration agreements executed by individuals who were authorized through powers of attorney to act on behalf of others. Id. at 248-50. At least one authorization was broad enough to incorporate entering into an arbitration agreement. Id. at 250. Despite this, the Kentucky Supreme Court invalidated the arbitration agreements. It explained that "the jury guarantee is the sole right the Kentucky Constitution declares sacred and inviolate," and, as such, "an agent could deprive her principal of an adjudication by judge or jury only if the power of attorney expressly so provided." Id. (cleaned up).

On review, the Court reversed the Kentucky Supreme Court, concluding that the clear statement rule is preempted by the FAA because it "relie[s] on the uniqueness of an agreement to arbitrate as its basis," and "fails to put arbitration agreements on an equal plane with other contracts." Id. at 251-52 (cleaned up). The Court declared that the FAA addresses not only enforcement, but also validity, of contracts:

> By its terms, then, the Act cares not only about the "enforce[ment]" of arbitration agreements, but also about their initial "valid[ity]"—that is, about what it takes to enter into them. Or said otherwise: A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made.

Id. at 254-55. That is not the case at bar.

The majority relies on this passage to conclude that FAA preemption "also extends to state rules that discriminate against the formation of arbitration agreements." By its own terms, and in its own words, the Supreme Court disavows the majority's reliance on such reasoning: "[our decision] falls well within the confines of (and goes no further than) present well-established law." Id. at 255 (quotation and citation omitted). Nothing in the present well-established law purports to do what the majority does today. As in previous cases, the Court was focused on addressing "rule[s] selectively finding arbitration contracts invalid because improperly formed." Id. at 254-55. In other words, in

Kindred Nursing, the Court only addressed pre-agreement behavior to the extent that it challenged the validity of executed contracts.  The situation in this case differs, as AB 51 does not impact the validity of the contracts executed under the prohibited pre-agreement behavior.

It is simply not the case, as the majority alleges, that the Supreme Court dramatically expanded the preemptive scope of the FAA in dicta—especially considering this dicta is nestled within language that explicitly references executed arbitration agreements.  See id.  The broader context of Kindred Nursing demonstrates its accord with the text of the FAA, which mandates that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The majority expands the scope of the FAA beyond its text in concluding that the Supreme Court recognizes FAA preemption for instances in which there is no question of the validity of the arbitration agreement.  Respectfully, the majority declares for the Court a holding that the Kindred Nursing Court itself disavowed in handing down its decision.

For similar reasons, Casarotto does not support the majority's conclusion.  Casarotto considered a Montana statute that "declared an arbitration clause unenforceable unless notice that the contract is subject to arbitration is typed in underlined capital letters on the first page of the contract."  517 U.S. at 683 (quotation omitted and alterations adopted).  The Court held the statute was preempted by the FAA, concluding it "directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally."  Id. at 687.  Casarotto exemplifies preemption of a state rule addressing the validity of an executed arbitration agreement.

It does not support the majority's argument that the FAA preempts state regulation of pre-agreement behavior when the validity of the arbitration agreement is not in question.**[2]**

### III

My colleagues misconstrue the jurisprudence of the Court. At the end of the last century, mandatory arbitration was utilized to resolve employer-employee disputes for approximately 2% of nonunion employers. See Alexander J.S. Colvin, The Growing Use of Mandatory Arbitration, Econ. Pol'y Inst. (Apr. 6, 2018), https://files.epi.org/pdf/144131.pdf. By 2018, that number had grown to approximately 56%. Id. My colleagues' misinterpretation leaves state legislatures powerless to ensure that arbitration clauses in these employment agreements are freely and openly negotiated. Moreover, courts are potentially left with an increasingly diminished role, or no role at all, in employer-employee disputes. This would effectively freeze the evolution of precedent for employment principles and law, and give employers unmitigated power to mandate the arbitration of all employer-employee disputes as a condition

---

[2] The two non-binding cases from other circuits cited by the majority are similarly unavailing. The Massachusetts statute in Sec. Indus. Ass'n v. Connolly only targeted arbitration agreements and appellants conceded as much to the district and circuit court. 883 F.2d 1114, 1120 (1st Cir. 1989). Similarly, the Virginia statute in Saturn Distrib. Corp. v. Williams voided all nonnegotiable arbitration agreements in automobile franchise agreements. 905 F.2d 719, 724 (4th Cir. 1990). These state laws are squarely preempted by the FAA because they single out arbitration clauses and void them. In contrast, AB 51 covers a range of waivers, including non-disparagement clauses and non-disclosure agreements, and does not void any past, present, or future arbitration agreement.

of employment.  I cannot join such a sweeping interpretation
of the FAA.  I accordingly dissent.